■ In the Matter of SHANNEN AA. and Another, Children Alleged to be Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MELISSA BB., Appellant. (And Another Related Proceeding.) [914 NYS2d 768]—

Malone Jr., J. Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered August 25, 2009, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate respondent's children to be neglected.

Petitioner commenced the first of these two proceedings in January 2007, alleging that respondent had neglected one of her daughters, Shannen AA. (born in 1993), by, among other things, sending the child to live with the child's paternal uncle and aunt, who respondent had never met and in whose care the child was raped. The matter was twice adjourned in contemplation of dismissal (hereinafter ACD). In July 2008, petitioner again moved to restore the matter to the calendar, alleging that respondent had again violated the terms of the ACD order, and commenced the second of these neglect proceedings. In the second petition, petitioner alleged that respondent neglected Shannen—who was then pregnant—by, among other things, failing to ensure that she received an adequate education. Petitioner also alleged that respondent's other daughter, Nicole H. (born in 2001), was derivatively neglected.

In March 2009, following a hearing, Family Court determined that respondent had violated the ACD order and restored the initial neglect petition to the calendar. It further found that petitioner had proven the neglect and derivative neglect alleged in the second neglect petition. As a result, the court scheduled a combined fact-finding and dispositional hearing to finally resolve both petitions. Following that hearing, by order entered August 25, 2009, the court determined that petitioner had also proven the neglect alleged in the second petition and ordered, among other things, that the children remain in petitioner's custody. Respondent now appeals.[*]

With respect to the first petition, a preponderance of the evidence supports Family Court's finding of neglect. The record reflects that respondent had difficulty controlling Shannen's behavior and, in January 2007, decided to send the child to live with the aunt and uncle; respondent did not first visit the aunt and uncle's home or investigate the conditions in which Shannen would be living. Shannen testified that she lived with her aunt and uncle for approximately one week before the aunt took her and the aunt's three children to a motel room, apparently because the aunt did not feel safe living with the uncle. Respondent had not given the aunt permission to relocate with

---

[*] According to respondent's brief, only the findings of neglect are contested on this appeal inasmuch as Shannen entered an independent living program and Nicole has been returned to her care.

Shannen and, in fact, did not know that the aunt had taken her until several days later. However, respondent did not attempt to find Shannen or call the police. Instead, respondent believed that it was the child's responsibility to call and tell her where the aunt had taken her. After Shannen was located, respondent allowed her to remain at the motel for five weeks, even after discovering that Shannen's father—who respondent knew to be a registered sex offender—was also residing there and had contact with the child. Moreover, respondent knew that Shannen was not attending school while at the motel, but did not think it was her responsibility to remedy the situation. Finally, after Shannen returned home, she revealed to respondent that she had been raped and, yet, respondent waited several days before obtaining medical care for her. In fact, respondent obtained care only after being instructed to do so by the police. The foregoing is sufficient to sustain the finding of neglect with respect to the first petition in that respondent " 'knew or should have known of circumstances which required action in order to avoid actual or potential impairment of the child' and failed to act accordingly" (*Matter of Mary MM.*, 38 AD3d 956, 957 [2007], quoting *Matter of Alaina E.*, 33 AD3d 1084, 1086 [2006]; *see* Family Ct Act § 1046 [b] [i]; *Nicholson v Scoppetta*, 3 NY3d 357, 368 [2004]; *Matter of Joseph DD.*, 214 AD2d 794, 796-797 [1995]).

A preponderance of the evidence also supports Family Court's finding of neglect with respect to the second petition. The record reveals that respondent failed to ensure that Shannen, then 14 years old, attended school or was available to meet with the tutor provided by the school. Although respondent claims that Shannen's absence from school was due to threats allegedly made against her, the testimony of petitioner's caseworker established that she worked with the school and respondent to develop and implement a safety plan for the child. Despite the existence of this plan, respondent continued to permit Shannen to be absent from school. Respondent subsequently claimed that Shannen was medically unable to attend school, but delayed getting a note from the child's doctor for at least two months. After a tutor was arranged, Shannen attended only two sessions due to the fact that respondent permitted her to move out of the school district to live with her boyfriend's family, despite being directed by petitioner to make the child available for schooling. Respondent likewise failed to make Shannen available to take her final exams, which resulted in Shannen receiving failing grades in all of her classes. This proof of Shannen's prolonged absenteeism, which negatively affected her education, is sufficient to support the finding of educational neglect (*see*

*Matter of Jalesa P. [Georgia P.]*, 75 AD3d 730, 732 [2010]; *Matter of Benjamin K.*, 28 AD3d 810, 812 [2006]).

In addition, Family Court's findings that respondent failed to provide adequate guardianship and supervision by permitting Shannen to spend unsupervised overnight visits with her boyfriend, which resulted in her becoming pregnant, and then by permitting Shannen to reside with her boyfriend following the birth of their baby in unsanitary and inappropriate conditions is supported by a preponderance of the evidence. Although respondent contends that any blame for these situations lies with Shannen for her refusal to return home, it was respondent's duty to provide her child with a minimum degree of care and supervision, and respondent's failure to intervene caused harm to Shannen (*see* Family Ct Act § 1012 [f] [i] [B]).

Finally, we are not persuaded by respondent's contention that any deficiencies in respondent's parenting abilities affect only Shannen and are not sufficient to support a finding of derivative neglect as to Nicole. A finding of derivative neglect is appropriate where a preponderance of the evidence demonstrates that the parent has " 'such an impaired level of parental judgment as to create a substantial risk of harm for any child in [his or her] care' " (*Matter of Dylan TT. [Kenneth UU.]*, 75 AD3d 783, 784 [2010], quoting *Matter of Daniella HH.*, 236 AD2d 715, 716 [1997]; *see* Family Ct Act § 1046 [b]). In addition, proof that a respondent neglected one child is admissible evidence to establish that the respondent also neglected another child (*see* Family Ct Act § 1046 [a] [i]). While there is no evidence of actual harm to Nicole, throughout these proceedings respondent consistently disavowed any responsibility for Shannen's actions or the serious consequences thereof, and openly blamed Shannen for Nicole's removal from her care. Considering the record as a whole, we agree with Family Court that respondent's complete abrogation of her responsibility to provide Shannen with a minimum degree of supervision and care demonstrates a fundamental misunderstanding of her role as a parent such that any child in her care was at risk of harm.

Mercure, J.P., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.